# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| STEVEN L. NOREN | ) | CASE NO. 08-72242 |
| | ) | |
| Debtor. | ) | |

| | | |
|---|---|---|
| STEVEN L. NOREN | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | A.P. No. 09-07009 |
| v. | ) | |
| | ) | |
| MARY ELIZABETH BROWN | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM DECISION

The matter before the Court is the Motion for Default Judgment filed with this Court on April 16, 2009 by the Plaintiff, Steven L. Noren. The Motion was heard on May 20, 2009 and the Court took the matter under advisement at that time. Counsel for the Plaintiff filed written authority in support of his position that the Court should grant Mr. Noren's Motion for Default Judgment and the matter is now ready for decision. For the reasons stated below, this Court denies the Motion.

### FINDINGS OF FACT

The parties to this proceeding are the parents of a daughter who is now an adult. Unfortunately that connection has resulted in a history of litigation between them going back over a period of years relating to issues of the financial support of such daughter before she reached the age of majority. Mr. Noren, the Debtor, is seeking a determination that any obligation he might otherwise have to Ms. Brown, the Defendant, as a result of a judgment

entered in her favor against him in the Circuit Court of Bedford County, Virginia is subject to discharge in the underlying bankruptcy case.  Although Ms. Brown was duly served with a copy of the Complaint and Summons as well as the Plaintiff's Motion for Default Judgment and Notice of Hearing, she has failed either to file any responsive pleading to such Complaint or appear at the hearing.  The matter now before the Court raises a serious issue as to when or if a court should grant perhaps unwarranted relief sought in a duly served complaint to which no defense or objection has been provided by the defendant.

For the purpose of considering the Debtor's request for entry of a default judgment against the Defendant, the Court must accept as true the allegations contained in the Complaint.  Those allegations are as follows:

1. The Debtor filed this case under Chapter 7 of the Bankruptcy Code on November 12, 2008.  This Court thus has jurisdiction over this action under 28 U.S.C. §1334.  This proceeding is a core proceeding.
2. One of the unsecured debts owed by the Debtor and listed on Schedule F is an amount owed to Mary Elizabeth Brown, the defendant, (an ex-girlfriend of the Debtor) for a breach of contract claim.
3. The Debtor and the Defendant had a child together; her name is Carter Marie Brown and her date of birth is July 11, 1988.
4. The Defendant brought an action in Bedford County J&DR Court in March 2004 seeking back child support and child support. The J&DR Court on September 24, 2004, entered an order determining that Steven Lowell Noren is the father of Carter Marie Brown, and the court also held, "*[t]here being no other order providing for reimbursement by the father*, the court orders the father to pay to the Virginia Department of Social Services the sum of $210.00" (emphasis added). . . . The court determined no back child support was owed by Mr. Noren.
5. On March 15, 2005, an Administrative Hearing Decision by the Virginia Department of Social Services was entered amending the monthly child support to $287.00. . .

6. Defendant filed a complaint (Case No.: CL06000506-00) in the Circuit Court of Bedford County on August 30, 2006, for back child support and/or for breach of contract. . . .

7. On September 7, 2006, a Notification of Action Taken by the Division of Child Support Enforcement was sent to Defendant informing her the child support case was closed and the defendant was to return $200.42 to Mr. Noren. . . .

8. On August 2, 2006, a Payment Record Letter was sent to Mr. Noren from the Division of Child Support Enforcement stating that the past due child support in Mr. Noren's case was $0.00. . . .

9. Defendant scheduled the case for trial, twice – December 13, 2006, and January 8, 2007. . . .

10. Defendant filed a voluntary non-suit (Case No.: CL06000506-00) to the action described in paragraph 6 above and that request was granted by an Order entered March 22, 2007. . . .

11. On March 13, 2007, the Defendant filed another petition seeking back child support in the Bedford County J&DR Court (Case No. JA013688-01-00), three years after the same court determined no back child support was owed by Mr. Noren. This case was filed prior to the end of the Circuit Court case described in paragraph 6 above. . . .

12. On March 26, 2007, the Bedford J&DR Court entered an Order accompanied by a letter opinion dismissing the action for lack of jurisdiction and finding the proceeding to be a contract action subject to contract rules of construction. . . .

13. Defendant filed another complaint (Case No.: 019CL07000214-00) in the Circuit Court of Bedford County on April 16, 2007, for back child support and/or for breach of contract. This case is still pending on the Bedford County Circuit Court's docket as of the day this Adversary Proceeding was filed. . . .

14. Defendant filed another complaint (Case No.: CL07000411-00) in the Circuit Court of Bedford County on July 25, 2007, for back child support and/or for breach of contract, and Mr. Noren filed his Answer to that complaint on August 7, 2007. . . . This is another complaint filed for the same claims as the complaint described in paragraph 12 above.

15. The case described in paragraph 14 above (Case No.: CL07000411-00) was noticed for trial on September 26, 2007, and again on November 14, 2008. . . .

16. On December 10, 2007, the Bedford County Circuit Court entered an Order granting judgment in the case described in

       paragraph 13 above (Case No.: CL07000411-00) for $65,000; and Mr. Noren was not present on December 10, 2007, nor did he receive notice for the hearing on that day. The Bedford County Circuit Court did not clarify in its Order whether the judgment was for back child support or breach of contract. . . .
17. Defendant has continually filed legal actions in the Courts of Bedford County, Virginia claiming the Debtor owed her back child support after the courts and the Division of Child Support Enforcement has found and determined that the Debtor does not owe child support to the Defendant.
18. Defendant continued to file legal actions and continuing those cases or having them dismissed until the Debtor did not appear, then with the Debtor absent Defendant requested judgment.
19. The judgment entered against the Debtor in favor of the Defendant . . . is solely a judgment for breach of contract and not for a domestic support obligation.
20. The judgment for breach of contract against Debtor is dischargeable in the Debtor's Chapter 7 bankruptcy case.
21. Defendant never paid to Debtor the $200.42 that she owed for Debtors [sic] overpayment of child support . . . .

[References to attached exhibits all omitted.]

The Circuit Court of Bedford County, Virginia entered judgment for $65,000 against Mr. Noren on December 10, 2007. That judgment order reads as follows:

       Came this day the parties, in person and counsel, upon the Plaintiff's motion for judgment against the Defendant, and the Court, after consideration of the evidence and argument of counsel, did find as follows:
       The Court grants judgment in the amount of $65,000 plus interest at the judgment rate from the date of this Order, plus the costs in this matter.
       There being nothing further to be done, it is ORDERED that this action be and hereby is stricken from the docket. . . .

The basis for this judgment was the following motion for judgment[1] filed by Ms. Brown against Mr. Noren:

> 1. Your Plaintiff, Mary Elisabeth Brown is an adult residing in Bedford County and is the mother of Carter Marie Brown, born July 11, 1988.
> 2. That by Agreement dated the 29th day of February, 1988, . . ., the Defendant agreed to pay the Plaintiff, Mary Elisabeth Brown, the sum of $75 per week for the support of said child.
> 3. The Defendant failed to pay such support.
>
> Child Support
>
> 4. That such Agreement created an obligation of child support dating back to July, 1988.
> 5. Such failure to pay child support is grounds for an award of attorney fees.
>
> Contract
>
> 6. The Agreement hereto creates a contract between the parties.
> 7. That the Defendant breached said contract by failing to pay said support.
> 8. This conduct represents a breach of contract which has caused your Plaintiffs damage.
>
> WHEREFORE the Plaintiffs seek judgement against the Defendant in the amount of $65,000, plus pre- and post judgement interest and their costs and attorney fees in this matter expended.

The contract between the parties which was attached to that motion for judgment has also been filed as part of Exhibit #3 to the Complaint filed in this Court. It reads, in relevant part, as follows:

> WHEREAS, Brown is now pregnant and Noren acknowledges paternity of said child; and

---

[1] Although the pleading appears to constitute a motion for judgment under established Virginia procedure and is so referenced in the judgment order entered by the Circuit Court of Bedford County, the Court notes that it is designated in the pleading as "Complaint." In this opinion the Court will refer to it as motion for judgment.

> WHEREAS, Noren acknowledges his paternal responsibility to Brown and the said unborn child;
>
> NOW, THEREFORE, in consideration of the circumstances, Noren agrees to pay to Brown the sum of $75.00 per week for support of said child beginning upon the Monday following the birth of said child until said child reaches the ages [sic] of 18 years. Noren further agrees to enroll the child on his health insurance policy and to pay all uncovered medical expenses of said child during its minority. Noren further agrees to pay the medical expenses of Brown's pregnancy. The care and custody of said child shall be with Brown. Noren shall have liberal visitation with the child, to include time during all major holidays, after giving Brown reasonable notice of his intent to exercise such visitation privileges. . . .

Mr. Noren filed a pro se response to the motion for judgment which asserted essentially that he had fulfilled his obligation of support. A notice was sent by Ms. Brown's attorney to Mr. Noren of a hearing at which he intended to seek entry of an order awarding Ms. Brown a judgment for $65,000 against him. Following that hearing the judgment order already described above was entered against Mr. Noren. Although such order recited that the "parties" appeared at the hearing, the Debtor claims that he neither received notice of such hearing nor was present at it. He makes no claim, however, that he was not made aware promptly of the entry of the judgment order in time to file a motion for a new trial or that such judgment is not a final enforceable judgment against him under Virginia law. If those assumptions are inaccurate, Mr. Noren certainly can attempt to exercise any right he may have under Virginia law to challenge such judgment in the court which rendered it.

After taking the Motion for Default Judgment under advisement, the Court invited counsel for the Debtor to submit written argument supporting the relief being sought by his client. Counsel has done so in a memorandum which contends that earlier court and administrative hearings relating to the parties' dispute had determined that Mr. Noren not only

had no liability to Ms. Brown for back support, but that in fact he had overpaid her and was due $200.42 from her. The memorandum also argues that under Virginia law this matter is one of breach of contract, not one for the common law obligation of support which a father owes his child, and cites the case of *Shoosmith v. Scott*, 217 Va. 789, 232 S.E.2d 787 (1977).

The essential provision of the contract between the parties, as alleged in the motion for judgment upon which the Circuit Court's judgment was based, is an agreement on Mr. Noren's part to pay $75.00 per week to Ms. Brown for the support of their daughter. Multiplying that figure by 52 weeks in a year and by 18 years of support until the age of majority yields a total of $70,200. Although the Debtor makes reference in his Complaint to various orders entered over the years concerning the issue of support, he never makes any direct allegation that he had paid all or even any particular portion of the child support to which he committed in the contract he made with Ms. Brown, the child's mother. The motion for judgment alleges that Mr. Noren signed a contract to pay such support but that he had not paid it. The amount awarded by the Circuit Court was the same amount alleged in the motion for judgment to be owing.

## CONCLUSIONS OF LAW

This Court has jurisdiction over this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. Determination of "the dischargeability of particular debts" is a "core" bankruptcy matter pursuant to 28 U.S.C. § 157(b)(2)(I).

The Bankruptcy Code in effect at the time Mr. Noren's bankruptcy petition was filed provides that a discharge in a chapter 7 bankruptcy does not discharge an individual debtor

7

from any debt "for a domestic support obligation." 11 U.S.C. § 523(a)(5). The term "domestic support obligation" is defined at 11 U.S.C. § 101(14A) as follows:

> a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is –
>
> (A) owed to or recoverable by–
>
> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
>
> (ii) a governmental unit;
>
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
>
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of–
>
> (i) a separation agreement, divorce decree, or property settlement agreement;
>
> (ii) an order of a court of record; or
>
> (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
>
> (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

Attempting to apply this definition to the facts involved here, there is no difficulty in finding that Ms. Brown is a "parent" of the parties' daughter and that the contract in question dealt with "support" by Mr. Noren of such daughter. It is further clear that the judgment in question was embodied in an "order" entered by the Circuit Court of Bedford County, which is a "court of

8

record" of the Commonwealth of Virginia. *See* Va. Code Ann. § 1-212 (2008 Repl. Vol.).[2]

Being that the judgment in question is in favor of Ms. Brown personally, it appears evident that the debt has not been "assigned to a nongovernmental entity." Even if the support agreement is not established by a "separation agreement, divorce decree, or property settlement agreement," the fact that the debt is "established" by an order of a state court of record seems to be all that the definition requires. This understanding appears to accord with that of *Collier on Bankruptcy*:

> The reference to court orders was originally added to the Code in 1984, making it clear that the exception covers cases in which there was no marriage, such as support orders for children born out of wedlock. Before 1984, courts had divided on the issue whether debts for children born out of wedlock were dischargeable in chapter 7 cases. The scope of the exception has been further expanded to include cases where a court has not yet entered an order creating an obligation in the nature of alimony or support, but such an order "is subject" to being entered. Prior to the 2005 amendments, a mere agreement to pay for support and maintenance did not fall within the exception. [footnotes omitted]

4 *Collier on Bankruptcy* ¶ 523.11[3] at p. 523-83 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2006). Even though the statute may have contemplated the more routine situation of a court order establishing an existing and prospective support obligation rather than one liquidating and entering judgment for past support never paid, its language is clearly broad enough that it covers both. It is evident that the purpose of Congress was to assure that a bankruptcy discharge not relieve a debtor of an obligation "in the nature of alimony, maintenance, or support" under applicable non-bankruptcy law. The fact that the parties agreed in a written document on a specific amount per week to be paid by Mr. Noren to Ms. Brown for

---

[2] "Courts of record" means the Supreme Court of Virginia, the Court of Appeals of Virginia, and the circuit courts.

the support of his daughter cannot change the fact that the essential nature of the contract was to pay child support.  Although Debtor's counsel has made a vigorous and valiant effort to offer an alternative interpretation of the judgment obligation, he quite understandably has been unable to provide a viable one.  While it is true that the *Shoosmith* decision of the Supreme Court of Virginia cited by counsel does make a distinction between "alimony" and "payments in lieu of alimony" provided for in a contract between husband and wife, 232 S.E.2d at 789, that distinction is not controlling here for at least two reasons.  First, the definition for "domestic support obligation" contained in the Bankruptcy Code applies not just to debts for "alimony" or "support" per se, but for obligations in a broader category of debts "in the nature of alimony, maintenance or support."  Second, while questions of property interests are determined by reference to applicable state or other non-bankruptcy law, the scope of an exception to a discharge in bankruptcy is determined by federal bankruptcy law.  *See In re Marchiando*, 13 F.3d 1111, 1116 (7th Cir. 1994); *Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d 386, 390 (6th Cir. 2005); *Int'l Fid. Ins. Co. v. Fox (In re Fox)*, 357 B.R. 770, 778 (Bankr. E.D. Ark. 2006); *In re Brown*, 331 B.R. 243, 249 (Bankr. W.D. Va. 2005) (Krumm, C.J.) ("When considering a claim for larceny, a bankruptcy court is not bound by the state law definition of the crime or tort, but may follow federal common law . . . ").

    A couple of remaining questions need to be addressed.  One is that the Court has given little consideration to the court and administrative proceedings which predate the Circuit Court of Bedford County judgment order.  The reason for that is that at the end of the day the critical question is whether that judgment is valid and enforceable under Virginia law.  All of the questions concerning the effect of prior determinations are matters which could have been raised

and apparently were at least partially raised in the pro se pleading which Mr. Noren filed in the Circuit Court to Ms. Brown's motion for judgment. Mr. Noren may feel quite strongly that the Circuit Court's judgment was wrong and possibly there is some justification for such an opinion. Nevertheless under very well settled principles relating to review of state court judgments by federal courts, this court has no authority to take a fresh look at the merits of that judgment. There being no contention that the state court did not have either personal jurisdiction over Mr. Noren or subject matter jurisdiction of the cause of action, the only authority this Court has with respect to that judgment is to examine whether the debt it determined or established was one which under the Bankruptcy Code is subject to, or excepted from, a bankruptcy discharge. The Court concludes that under the allegations of the Complaint, including all of its incorporated exhibits, the debt determined to exist by the Circuit Court of Bedford County is a "domestic support obligation" within the meaning of 11 U.S.C. §§ 101(14A) and 523(a)(5) and therefore is not dischargeable.

The other question is why the Court declines in the face of the Defendant's undeniable default to grant the declaratory relief sought by the Debtor. Certainly no litigant who defaults in answering valid legal process or making any appearance at the hearing upon a motion for entry of a default judgment has any entitlement to the Court's careful review of the merits of an uncontested matter before it. Nevertheless, the Court believes that it has an independent duty not to grant relief when it is satisfied that to do so is contrary to applicable and clear provisions of the Bankruptcy Code. More specifically, while the Court would not on its own initiative raise some quite valid affirmative defense, such as the statute of limitations, to a cause of action asserted in an adversary proceeding before it, such restraint does not relieve a plaintiff of the

obligation to make a prima facie showing of entitlement to the relief being sought.  Were the Court to proceed otherwise, it would inescapably be drawn bit by bit into practical complicity with use of court process for inappropriate purposes.  In such a court where "anything goes" as long as no one objects, attorneys are effectively encouraged to be governed by what the court will acquiesce in rather than by counsel's obligation as an officer of the court not to make contentions in pleadings which are not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Bankruptcy Rule 9011(b)(2).  The Court wishes to be clear that it is not making here some implied criticism of Debtor's counsel with respect to the filing and prosecution of this particular adversary proceeding.  To the contrary instead it wishes to note its high regard for the candor, professionalism and high ethical standards of such counsel.  The purpose of this paragraph is simply to express this Court's judicial philosophy as to how it perceives the way in which it ought to operate and to explain the rationale for its unwillingness under the facts presented in this adversary proceeding to grant relief which the Defendant has not contested.

## CONCLUSION

Based on the preceding, this Court concludes that the Plaintiff's Motion for Default Judgment should be denied.   An order to such effect shall be entered contemporaneously herewith.

This the 17th day of June, 2009.

_William F. Stone, Jr._

UNITED STATES BANKRUPTCY JUDGE